UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SAMUEL VEGA,

        Plaintiff,

-vs-                                     Case No. 6:05-cv-832-Orl-28JGG

US HOSPITALITY SERVICES, INC.,
MICHAEL CHATHAM,

        Defendants.

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for evidentiary hearing on December 7, 2005, and January 9, 2006, on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT (Doc. No. 13)** |
| **FILED:** | **November 4, 2005** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

### I.   BACKGROUND

From December 16, 2004 to February 5, 2005, Plaintiff Samuel Vega worked for Defendants, US Hospitality Services, Inc. and Michael Chatham. Defendants' business was the renovation of hotels and Plaintiff worked for Defendant renovating the Hilton Hotel in Cocoa Beach, Florida. Defendant US Hospitality Services is alleged to be a California corporation that operates in California

and Florida. Defendant Chatham is alleged to be the owner and/or officer of US Hospitality Services and resides in California. Plaintiff seeks to hold Defendants liable for unpaid minimum wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq.* ("FLSA") and for common law breach of contract. Plaintiff properly served both Defendants in California. Docket Nos. 6, 7. Defendants failed to answer or otherwise respond to the complaint. Defendants also failed to appear at either of the hearings discussed below.

Plaintiff submitted an affidavit stating that he worked as a "laborer" for Defendants and provided his hours worked. At the first hearing on December 7, 2005, the Court noted a discrepancy in Plaintiff's job title – in the complaint, Plaintiff alleged he was a "foreman." The Court asked for an explanation of Plaintiff's true job, but Plaintiff's counsel, Charles Scalise, was unable to provide a clear explanation. The Court also noted that Plaintiff claimed to work more than 40 hours per week, but the complaint did not contain a claim for overtime wages under the FLSA. Scalise responded that overtime was not claimed because exempt employees are ineligible for overtime. The Court noted that exempt employees also are ineligible for minimum wages under the FLSA. Scalise then argued that Defendants failure to pay Plaintiff nullified Plaintiff's exempt status.

The Court determined that Plaintiff's argument that his exempt status was nullified was without merit. *See Nicholson v. World Business Network, Inc.*, 105 F.3d 1361 (11th Cir. 1997) (the failure to pay an agreed salary does not create a cause of action under the FLSA for an otherwise exempt employee). The Court, therefore, noticed an evidentiary hearing for January 9, 2006, for Plaintiff to present evidence regarding his entitlement to minimum wages under the FLSA. Docket 18.

At the January 9, 2006, hearing, Plaintiff initially argued that Defendants bore the burden of proof regarding an exemption and, because Defendants had not appeared to present evidence on the issue, the Court should not inquire into Plaintiff's possible exempt status. Plaintiff further argued that a defaulting party is deemed to have admitted all well-pleaded allegations of the complaint, and Plaintiff's complaint satisfactorily alleged a violation of the FLSA. Plaintiff nevertheless supplemented his previously submitted affidavit by testifying regarding his employer, his position, his duties, and his pay.

Plaintiff explained that he had performed work for Defendants in Virginia as a laborer at the rate of $600 per week. After the completion of that job, Defendant Chatham (the "owner" of US Hospitality Services, Inc.) offered Plaintiff work in Cocoa Beach, Florida on the Hilton job. Plaintiff orally agreed to work for $700 per week. Plaintiff considered himself to be a foreman, although he did not have a formal title. Chatham gave Plaintiff express authority to hire and fire employees. Plaintiff in fact fired 7-8 employees and hired their replacements. Plaintiff also was responsible for verifying other employees' work hours so that they could be paid. Plaintiff oversaw a crew that varied in size from 15-35 employees. He was responsible for handing out individual work assignments to employees on his crew. Chatham told Plaintiff that he would pay Plaintiff and his crew in cash, and that Plaintiff would be responsible for receiving the cash and handing out the proper amounts to his crew. Plaintiff was given these responsibilities because he spoke both English and Spanish.

Plaintiff occasionally reported to Defendant Chatham, but most of his contacts were with the on-site project superintendent, Ron Safford. Safford supervised Plaintiff's crew, as well as a furniture crew. Safford set work hours and break times for all employees. He also directed Plaintiff as to what was to be done on a particular day. Safford reviewed the work quality and would give Plaintiff the

punch list of any corrections that were needed. Plaintiff considered his primary duty as "getting the job done." Plaintiff estimated most of his time was spent performing manual labor, *e.g.*, hanging sheetrock or breaking tile, and that he performed managerial duties for approximately 40 minutes each day. On average, Plaintiff worked 63 hours per week. Other employees were paid $600-$800 per week. Some of the other employees were more skilled than Plaintiff in the renovation tasks that were performed.

Plaintiff asked Chatham to pay the wages owed to himself and his crew. Chatham, however, did not pay Plaintiff or anyone else working on Plaintiff's crew.

II.   **THE LAW**

   A.   **Default Judgment**

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed. R. Civ. P. 55 (a). Rule 55 (b)(2) further provides:

> In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages *or to establish the truth of any averment by evidence or to make an investigation of any other matter*, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States. (Emphasis added.)

The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. Rather, the Court must find that there is a sufficient basis in the pleadings for

the judgment to be entered. *Nishimatsu Construction v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A default judgment cannot stand on a complaint that fails to state a claim. *Chudasama v. Mazda Motor Corporation*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997), *citing Nishimatsu*, 515 F.2d at 1206. A default judgment has the effect of establishing as fact the plaintiff's well-pleaded allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 39, 361 (11th Cir. 1987), *citing Nishimatsu*, 515 F.2d at 1206.

### B.     The Law of Personal Jurisdiction

Rule 4(e) of the Federal Rules of Civil Procedure limits the jurisdiction of federal courts to service over nonresident defendants in the manner authorized by the forum state's law, absent Congress's grant of nationwide jurisdiction, which is not found in the FLSA. *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998). The United States Court of Appeals for the Eleventh Circuit uses a two-part analysis in determining whether a district court had personal jurisdiction over nonresident defendants. The first step involves determining whether the forum state's long-arm statute provides a basis for jurisdiction. If the Court finds that personal jurisdiction exists under Florida's long-arm statute, the Court must then consider whether the defendant's contacts with the state of Florida are sufficient to satisfy the due process clause of the Fourteenth Amendment such that maintenance of the suit in Florida does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 315-17 (1945); *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.1990); *Venetian Salami Co.*, 554 So. 2d at 502 (Fla. 1989). If both prongs of the jurisdictional test are satisfied — Florida's long-arm statute and the due process analysis — then the Court may exercise personal jurisdiction over the nonresident defendant. *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990).

### 1. The Florida Long-Arm Statute

This Court examines the Florida long-arm statute as would the Florida Supreme Court because the reach of the statute is a question of state law. *See Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890-91 (11th Cir. 1983); *Madara v. Hall*, 814 F. Supp. 1058, 1064 (M.D. Fla. 1993). Florida's long-arm statute is strictly construed, and the plaintiff has the burden of proving facts which satisfy the criteria. *Oriental Imports & Exports,* 701 F.2d at 891. The pertinent subsections of Florida's long-arm statute provide:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> \* \* \*
>
> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> 1. The defendant was engaged in solicitation or service activities within this state; or
>
> 2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.
>
> \* \* \*
>
> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193. Where directly conflicting affidavits cause the Court to hold an evidentiary hearing (*see Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989)), the plaintiff bears the burden of proving personal jurisdiction at the evidentiary hearing. *See Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 295 (S.D. Fla. 1997). However, the defendant's submission of an affidavit containing mere conclusory allegations of ultimate fact are insufficient to shift to the plaintiff the burden of producing evidence supporting jurisdiction. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999). Also, with respect to those points upon which the competing affidavits do not conflict, the Court may accept as true the applicable allegations in the complaint for purposes of resolving jurisdictional issues under the requirements of the Florida long-arm statute and the Due Process Clause. *Id.* at 1215.

In order to establish that a non-resident defendant is carrying on a business or business venture in Florida, the Court must consider whether the sum of the defendant's collective business activities shows a general course of business activity in the state for pecuniary benefit. *Sculptchair, Inc.*, 94 F.3d at 627 - 28 (11th Cir. 1996) (relatively insignificant and sporadic sales efforts of three to five transactions grossing only $3,000 nevertheless qualified as a general course of business activity in Florida for pecuniary benefit); *Musiker*, 960 F.Supp. at 295 - 96; *see also, Cauff Lippman & Co. v. Apogee Finance Group, Inc.*, 745 F.Supp. 678, 682 (S.D. Fla.1990) (one meeting in Florida, negotiations, and other communications by letter, telex and telephone from out of state were insufficient to obtain personal jurisdiction over non-resident defendants); *Jasper v. Zara*, 595 So.2d 1075, 1075-76 (Fla. 2d DCA 1992) (no personal jurisdiction where the plaintiff initially solicited the defendant in New York by phone and the defendant subsequently communicated with the plaintiff and his accountant by telephone and letter over a period of 18

months); *Intercontinental Corp. v. Orlando Regional Medical Center*, 586 So.2d 1191, 1195 (Fla. 5th DCA 1991) (no personal jurisdiction where defendants' only contacts consisted of letters and telephone calls from Kentucky or Indiana into Florida, and a single meeting attended by defendants' counsel in Florida).

A corporation may be subject to jurisdiction when it transacts business through its agents in the forum state, unless the agents are transacting business on their own account. *Sculptchair, Inc.*, 94 F.3d at 628 (11th Cir. 1996). Under Florida law, an agency relationship has the following elements: 1.) the principal acknowledges that the agent will act for it; 2.) the agent accepts the undertaking; and 3.) the principal controls the actions of the agent. *See Goldschmidt v. Holman*, 571 So.2d 422, 424 n. 5 (Fla. 1990); *accord, Ilgen v. Henderson Properties, Inc.*, 683 So.2d 513, 514 - 15 (Fla. 2d DCA 1996). Control is critical in determining agency. *See Parker v. Domino's Pizza, Inc.*, 629 So.2d 1026 (Fla. 4th DCA 1993); *accord, Sculptchair*, 94 F.3d at 629. Under Florida law, a principal's actions may give rise to apparent authority and agency. *Overseas Private Investment Corp. v. Metropolitan Dade County*, 47 F.3d 1111, 1114 (11th Cir. 1995); *Borg-Warner Leasing v. Doyle Electric Company, Inc.*, 733 F.2d 833, 836 (11th Cir 1984); *Ja Dan, Inc. v. L-J, Inc.*, 898 F.Supp. 984, 900 (S.D. Fla.).

Where a defendant conducts isolated, insubstantial business in Florida, the plaintiff must show that its cause of action arises from the defendant's business activity in Florida. Fla. Stat. § 48.193 (1)(a), (2). Where a state's long-arm statute requires that the plaintiff's cause of action arise out of defendant's business activity in the forum state, the mailing of two cease and desist letters threatening a patent infringement lawsuit, without more, is of insufficient quality and degree to be the "transaction of business" in the forum state. *Graphic Controls Corp. v. Utah Medical*

*Products, Inc.*, 149 F.3d 1382, 47 U.S.P.Q.2d 1622 (Fed. Cir. 1998) (no personal jurisdiction where declaratory judgment action arose out of cease and desist letters, and not out of commercial activity in New York); *accord, Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1270 - 71 (Fed. Cir. 1998); *Genetic Implant Systems, Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 - 59 (Fed. Cir. 1997).

### 2. Due Process Analysis

If there is a basis for asserting personal jurisdiction under the long-arm statute, the Court then considers due process. *Black v. Bryant*, 905 F.Supp. 1046, 1051 (M.D. Fla. 1995). The due process analysis is a two-prong inquiry. First, the Court determines whether sufficient minimum contacts exist between the defendant and the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258 - 60 (11th Cir. 1996); *Madara*, 916 F.2d at 1510. Second, the Court determines whether the maintenance of the suit is reasonable, and does not violate "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945).

#### a. Minimum Contacts

In determining whether sufficient minimum contacts exist with the state of Florida, the Court considers whether the defendant has purposefully established minimum contacts with the forum state out of which the instant action arises. *See Hoechst*, 896 F.Supp. at 1193 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 108-09 (1987)). The Court assesses whether the defendant has purposefully availed itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protection of its laws. *See Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The cause of action must arise out of the contacts with the forum state. *See Sculptchair, Inc.*, 94 F.3d at 631 (no legitimate dispute that the marketing of infringing goods in Florida is intimately connected with a patent and trademark holder's cause of action for patent infringement, trademark infringement, unfair competition, and breach of a licensing contract).

The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. *Rudzewicz*, 471 U.S. at 475; *accord World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Adequate contacts proximately result from a defendant's actions which create a "substantial connection" with the forum State. *Burger King*, 471 U.S. at 475. The substantial connection between a defendant and the forum state must come about by an action of the defendant purposefully directed toward the forum state. *See Asahi*, 480 U.S. at 109 - 11.

b. **Reasonableness, Fair Play, and Substantial Justice**

In the second prong of the due process analysis, the Court determines whether the maintenance of the suit is reasonable, and does not violate "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945). The Court considers the defendant's contacts with the forum state in light of several factors, including: 1.) the burden on the defendant in defending the lawsuit in the forum state; 2.) the forum state's interest in adjudicating the dispute; 3.) plaintiff's interest in obtaining convenient and effective relief; 4.) interstate judicial system's interest in

obtaining most efficient resolution of the controversy; and 5.) shared interests of the several states in furthering fundamental substantive social policies. *See Asahi*, 480 U.S. at 113; *Madara*, 916 F.2d at 1517.

C.     **FLSA Claims**

Section 206 of the FLSA requires every employer to "pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a minimum wage. 29 U.S.C. § 206(a). (The current federal minimum wage is $5.15 per hour.) An action to recover the minimum wages may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. 29 U.S.C. §216(b).

The FLSA defines "employer" as including any person acting directly or indirectly in the interest of the employer in relation to an employee. 29 U.S.C. § 203(d). An "enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that 1.) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and 2.) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000. 29 U.S.C. § 203(s)(1).

An "employee" under the FLSA means any individual employed by an employer, with certain exceptions. 29 U.S.C. § 203(e)(1). Exemptions to the FLSA's minimum wage and overtime requirements are set forth in 29 U.S.C. § 213. Employees employed in a bona fide executive, administrative or professional capacity are among the listed exemptions. *Id.* The term

"employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

The employer bears the burden of proving an exemption to the FLSA. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). Exemptions from the overtime provisions of section 207 are to be narrowly construed against the employer. *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296 (1985). The Act should be interpreted liberally in the employee's favor, and the employer must prove applicability of an exemption by "clear and affirmative evidence." *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211 (1959); *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 805 (11th Cir. 1992).

If an employee establishes a violation of Section 206, the employee is entitled to an equal amount as liquidated damages. 29 U.S.C. § 216(b).

### D. Awards of Reasonable Attorneys' Fees and Costs

An award of "reasonable attorneys' fee[s] . . . and costs" is mandatory under 29 U.S.C. § 216(b) if the employer is held liable under the FLSA. Although the court is obligated to award the attorneys' fees, Congress's use of the word "reasonable" confers discretion upon the court to determine the amount of fees to be awarded. In determining the reasonableness of attorneys' fees pursuant to a fee-shifting statute, the lodestar generally is recognized as a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).[1]

Even a contested request for attorneys' fees "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The party seeking attorneys' fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill. *See id.* at 433, 437. Further, fee counsel must "supply the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988). Satisfactory evidence of the prevailing market rate "at a minimum is more than the affidavit of the attorney performing the work," and must address rates actually billed and paid in similar lawsuits. *Id.* at 1299. Where the documentation is inadequate, the district court must still determine a reasonable fee, which it may do without further pleadings or an evidentiary hearing. *Id.* at 1303. This is because the court itself is an expert on the question and "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment

---

[1] The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988).

either with or without the aid of witnesses as to value." *Id.* (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

The award of costs is made in accordance with 28 U.S.C. § 1920. *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1169 (S.D. Fla. 2003). In an FLSA action, it is error for a district court to award costs in excess of those permitted by § 1920. *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988) (district court erred in awarding expert witness fees under §216(b) that exceeded the amount allowed by § 1920). Likewise, a district court must identify reasons for denying costs to a prevailing party so that the appellate court has some basis to review whether the district court acted within its discretionary power. *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995).

## II. ANALYSIS

### A. Plaintiff's FLSA Claim

Plaintiff's complaint alleges that Defendants are employers within the meaning of the FLSA, that he was employed by Defendants and that he was never compensated for his work. Docket 1. The general rule is that a defaulting party is deemed to have admitted all well-pleaded allegations of the complaint. *Cf. Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41(11th Cir. 1997), *citing Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975) ("A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true"). Based on the allegations of the Complaint, Plaintiff states a claim for violation of 29 U.S.C. § 206 for failure to pay minimum wages under the FLSA.

The Court, however, is not required to accept the allegations of a complaint when the party makes a statement that, if true, would provide a complete defense to liability. In this case, Plaintiff's counsel stated that a claim for overtime pay under the FLSA was not brought because exempt employees are not entitled to overtime wages. The clear import of this statement was that Plaintiff was an exempt employee. To enable the Court to enter default judgment, the Court is empowered to establish the truth of the averments by taking evidence or to make an investigation of any other matter. Fed. R. Civ. P. 55(b)(2). The Court's powers are not limited merely to taking evidence as to the amount of damages.

Plaintiff has submitted sufficient evidence for the Court to conclude that Plaintiff was a working foreman and was not exempt from the FLSA. Although it is not determinative that an employee spends less than 50% of his time performing managerial duties, Plaintiff's managerial duties consumed a minimal amount of time. It was clear that his primary duties were the ordinary performance of manual labor.

Plaintiff has submitted evidence that he was not compensated for 423 hours of work. At the minimum wage rate of $5.15 per hour, Plaintiff is owed $2,178.45 in wages. Under the FLSA's liquidated damages provision, Plaintiff is entitled to an additional $2,178.45.

Pursuant to 29 U.S.C. §216(b), Plaintiff is also entitled to recover attorney's fees and costs associated with the collection of his unpaid overtime compensation. Plaintiff seeks to recover $2,688 in attorney's fees and $455 in costs.[2] The costs are reasonable and should be awarded. Having reviewed the supporting documentation (Doc. No. 13-3) and heard argument of counsel,

---

[2] Although the Attorneys' Fee Affidavit filed at Docket 13 requests total fees of $2,238.00, Scalise requested that the amount be increased by 1.5 hours (at $300 per hour) to reflect his time at the two hearings.

the Court determines that counsel's rates are not reasonable. Counsel seeks compensation at the rate of $300 per hour, and provides no evidence other than a self-serving statement that counsel is "familiar with the rates charged by attorneys with similar experience in Central Florida [and] a reasonable hourly fee for a lawyer with similar experience and expertise is $300 per hour." (Doc. 13-3 at ¶ 4, 5.) This Court has previously analyzed the reasonableness of counsels' rates for work on FLSA cases and determined that $250 per hour is a reasonable rate.

The Court also finds it unreasonable to hold Defendants accountable for work that is clerical in nature and not legal work. The Court recommends that the number of hours for counsel's paralegal be reduced from 2.4 to 1.0. The Court has determined a reasonable attorneys' fee for work in this matter equals $2,145.

**B.     In Personam Jurisdiction**

This Court has subject matter jurisdiction over Plaintiff's FLSA claim, as well as personal jurisdiction over the non-appearing defendants. Plaintiff alleges the Defendant US Hospitality Services, and Chatham as its owner, operates hotel renovations in California and Florida (Docket 1 at ¶ 5). Plaintiff's testimony provides sufficient evidence to establish personal jurisdiction over Defendants. Plaintiff testified that Defendants operated in Florida for at least a seven week period performing work at the Cocoa Beach Hilton property. Defendants conducted more than isolated and insubstantial business in Florida, and Plaintiff has shown that his cause of action arises from the Defendants' business activity in Florida. Plaintiff performed the work in Florida. See Fla. Stat. § 48.193 (1)(a), (2). Therefore, Florida's long-arm statute is satisfied.

Due process also is satisfied. Defendants had minimum contacts with the State of Florida by purposefully availing themselves of the privilege of conducting business here. Further,

traditional notions of fair play and substantial justice are satisfied. Despite being served with the summons and complaint and notices of the hearing on the default judgment, Defendants have failed to come forward and defend the lawsuit in Florida. As Plaintiff performed the work in Florida and is a Florida citizen [Docket 1 at 6], Florida has an interest in adjudicating the dispute and the plaintiff has an interest in obtaining convenient and effective relief. Having found jurisdiction over the FLSA claim, the Court also may exercise supplemental jurisdiction over Plaintiff's state law breach of contract claim. 28 U.S.C. § 1367.

### C. Plaintiff's Contract Claim

Although the focus of the motion was Plaintiff's FLSA claim, the motion makes an alternate request for judgment based on Plaintiff's common law breach of contract claim for unpaid wages. Plaintiff alleges that he was promised $700 per week in wages and that he was not paid for seven weeks of work. Plaintiff's testimony was credible. Therefore, Plaintiff is entitled to $4,900 in contract damages.

Accordingly, it is **RECOMMENDED** that:

1. Plaintiff's motion for final default judgment (Doc. No. 13) against Defendants be **GRANTED.**

2. Defendants US Hospitality Services, Inc. and Michael Chatham be held jointly and severally liable pursuant to Plaintiff's FLSA claim, and that Plaintiff be awarded $2,178.45 in unpaid minimum wages, $2,178.45 in liquidated damages, and $2,600 in attorney's fees and costs, for a total amount of $6,956.90.

3. Defendant US Hospitality Services, Inc. be held liable pursuant to Plaintiff's common law breach of contract claim, and that Plaintiff be awarded $4,900. If,

however, Plaintiff collects his unpaid wages under the FLSA, the contract damages are offset by the amount of unpaid wages up to $2,178.45.

4. Judgment be entered in favor of Plaintiff and against Defendants.

5. The Clerk be directed to close the case.

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on January 10, 2006.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable John Antoon, II
Counsel of Record
Unrepresented Parties:
    US Hospitality Services, Inc. and Michael Chatham
    8860 Exposition Blvd., Culver City, CA 90232
Courtroom Deputy